## In re Mingin

*John V. Diggins*, for petitioner.

*C. William Kraft, Jr.*, district attorney, for Commonwealth.

MACDADE, P. J., August 1, 1945.—This defendant, William E. Mingin, pleaded guilty in the Court of Quarter Sessions of the Peace in and for the County of Delaware, on October 9, 1941, after several bills of indictment, being nos. 149, 150, 151, 152, and 153, September sessions, 1941, were found against him as an embezzler, and subsequently sentenced by the aforesaid court as follows:

(*a*) Under indictment no. 149, September sessions, 1941, to pay a fine of $500 and costs and to undergo imprisonment in the Eastern State Penitentiary for a period of five years minimum to ten years maximum and to make restitution to the School District of the Borough of Media;

(*b*) Under indictment no. 150, September sessions, 1941, to pay a fine of $500 and costs and to undergo imprisonment in the Delaware County Jail for one year;

(*c*) Under indictment no. 151, September sessions, 1941, to pay a fine of $100 and costs;

(*d*) Under indictment no. 152, September sessions, 1941, to pay a fine of $500 and costs and to undergo imprisonment in the Eastern State Penitentiary for a period of five years minimum to ten years maximum and to make restitution to the Borough of Media; and

(*e*) Under indictment no. 153, September sessions, 1941, to pay a fine of $500 and costs and to undergo imprisonment in the Eastern State Penitentiary for a period of five years minimum to ten years maximum and to make restitution to the County of Delaware.

Subsequently, to wit, on April 27, 1945, defendant, William E. Mingin, having been remanded by the Superior Court of Pennsylvania to the Court of Quarter Sessions of the Peace in and for Delaware County, for re-sentence by opinion and order of the said Superior Court of Pennsylvania, dated March 14, 1945, to no. 337, Misc. Docket no. 5, defendant was re-sentenced by the said Court of Quarter Sessions of the Peace in and for Delaware County, Pa., as follows:

(*a*) On indictment no. 149, September sessions, 1941, to pay a fine of $500 and costs and to undergo imprisonment in the Delaware County Prison for a period of five years and to make restitution to the School District of the Borough of Media;

(*b*) On indictment no. 150, September sessions, 1941, to pay a fine of $100 and costs and to undergo imprisonment in the Delaware County Jail for one year;

(*c*) On indictment no. 152, September sessions, 1941, to pay a fine of $500 and costs and to undergo imprisonment in the Delaware County Prison for a period of five years and to make restitution to the Borough of Media; and

(*d*) On indictment no. 153, September sessions, 1941, to pay a fine of $500 and costs and to undergo imprisonment in the Delaware County Prison for a period of five years and to make restitution to the County of Delaware, all of which sentences were by said order directed to run from the date of defendant's original

commitment to the Eastern State Penitentiary, which was October 9, 1941, and on indictment no. 151, September sessions, 1941, defendant and petitioner herein was sentenced to pay a fine of $100 and costs. No change was made in the former sentence in this respect except that it was to run concurrently.

The total aggregate sentence which defendant was required to serve in the Delaware County Prison was a period of five years plus fines, totaling $1,700, and costs totaling $26.25, and to make restitution totaling $45,937.56, being school, borough, and county taxes which he embezzled and appropriated to his own use as tax collector of the Borough of Media. We believe the money has been refunded by the surety company, which company is to be advised of these proceedings in insolvency, infra.

Pursuant to the mandate contained in the Act of May 11, 1901, P. L. 166, sec. 1 et seq., 61 PS §271, his Excellency, Edward Martin, Governor of the Commonwealth of Pennsylvania, in certain proceedings before the State Pardon Board, ordered that the sentence of defendant, William E. Mingin, be commuted for good behavior and by mandate addressed to the said Court of Quarter Sessions of the Peace in and for Delaware County, Pa., directed that defendant be discharged as of April 9, 1945.

Pursuant to said mandate of the Governor, defendant was called before this court on Wednesday, July 11, 1945, for discharge, on which date the court remanded defendant for 90 days' additional servitude, in default of payment of fine and costs, a sentence or judgment apart and distinct from the jail sentence imposed. This is the ruling of the State Supreme Court in ruling the State Parole Act to be constitutional. The opinion was not unanimous, however.

Defendant filed a petition agreeable to the several acts of assembly in such case made and provided re-

lating to his discharge under the Insolvency Acts, being the Acts of June 1, 1915, P. L. 704, and the Act of June 4, 1901, P. L. 404, cited in 39 PS §§9, 10, 11, 12, and 13, respectively.

## Discussion

The law relating to discharge of prisoners because of insolvency outlines a clear and concise procedure in the premises and the petition which defendant herein has filed conforms to the procedure outlined by the statute. The Act of June 1, 1915, P. L. 704, sec. 1, cited in 39 PS §9, provides:

"From and after the passage of this act, any person arrested or held in custody, on or by virtue of any process issued on a judgment obtained in any civil action in this Commonwealth, may present his petition to the court, or any law judge thereof, out of which the process or execution issues, praying for his discharge from arrest. The petition shall set forth the nature of the proceedings out of which the process, upon which the petitioner is held, issued, the amount of the judgment therein obtained, a schedule of all the assets of the petitioner, a list of the creditors of the petitioner with the amounts of their claims; the addresses of the creditors, and the nature of the debts owing to them; a statement as to why the petitioner is unable to pay the judgment, and shall be verified by the affidavit of the petitioner."

It will be noted, however, that this section above quoted pertains to any person held in custody by reason of a civil judgment, but section 6 of the Act of June 4, 1901, P. L. 404, 39 PS §13, provides that the court of common pleas of any county in which any person may be confined by sentence or order of any court of this Commonwealth until he restore any stolen goods or chattels, or pay the value thereof, or in which any person may be confined for the nonpayment of any fine or of the costs of prosecution, etc., shall discharge such person from confinement on his making application and

conforming to the provisions herein directed in the case of insolvents who have been arrested on civil process, and we quote herewith that section:

"The court of common pleas of any county, in which any person may be confined by sentence or order of any court of this commonwealth until he restore any stolen goods or chattels, or pay the value thereof; or in which any person may be confined for the nonpayment of any fine or of the costs of prosecution, or upon conviction of fornication and bastardy, and for no other cause, shall discharge such person from confinement on his making application and conforming to the provisions herein directed in the case of insolvents, who have been arrested on civil process: Provided, That where such person shall have been sentenced to the payment of a fine, or after a conviction of fornication and bastardy, he shall not be entitled to make such application until after he shall have been in actual confinement for a period of not less than three months, except in case of a fine not exceeding fifteen dollars, exclusive of costs, in which event the actual confinement need not exceed thirty days."

Then, section 2 of the Act of June 1, 1915, P. L. 704, 39 PS §10, provides:

"The court to which the petition is presented shall grant a rule to show cause why the petitioner shall not be discharged from arrest, returnable at some convenient time, and shall discharge the petitioner, pending the hearing of the said rule, upon his entering such security for his appearance, surrender, and compliance with the decree of the court as the court shall deem requisite."

The petition is presently in the hands of this court, with a prayer for a rule as provided in the above-quoted section. It would therefore seem that if the petition is found to be agreeable to the terms of the statute, it is the duty of the court to issue such rule and to include in the order granting the rule, an order for such notice

as is provided by section 3 of the Act of June 1, 1915, P. L. 704, 39 PS §11, which is as follows:

"Actual notice of the hearing of the rule shall be given to the plaintiff in the process, or his counsel of record, and to all the creditors whose addresses are known to the petitioner; and publication of the hearing of the said rule shall be made twice in a daily newspaper in the county, and once in the legal periodical, if any, designated by the court, and an affidavit of the service of the notices upon the creditors and of the publication shall be filed at or before the time fixed for the hearing of the rule."

The suggested order granting the rule, as presently in the hands of the court, is drawn agreeable to these provisions, and in the suggested order the Chester Times has been named for publication of such notice at least twice, since it is the only daily newspaper in the county; the rule to be advertised also in our legal periodical (The Weekly Reporter).

When the rule is granted and notice is given and proof of service thereof filed, and the matter comes on for hearing in conformity with the rule to show cause, section 4 of the Act of June 1, 1915, P. L. 704, 39 PS §12, outlines the procedure necessary, and this section is quoted herewith:

"Upon the hearing of the rule the petitioner shall be required to answer all questions put to him, and shall produce all books and papers required of him; and if it shall appear to the court that the petitioner is without means or property with which to pay the judgment, and that he has not secreted or assigned any of his property so as to avoid the payment of the judgment, the court may discharge him from arrest and in said proceedings; but such discharge shall not in any way affect the judgment entered against him. Any person arrested or held in custody on or by virtue of, any process issued on a judgment obtained in any civil

action in this Commonwealth, shall be discharged at the expiration of sixty days from the date of the commitment, if compliance is had with all the requirements of this act and all other acts of Assembly relating to insolvency."

The law quoted above provides machinery for the discharge of a prisoner failing to make restitution or confined for nonpayment of fine and costs of prosecution, and, since in this case defendant did not fall within that class of offense where the fine does not exceed $15, the Act of June 4, 1901, P. L. 404, sec. 6, supra, provides that defendant shall not be entitled to make such application (for discharge) until after he shall have been in actual confinement for a period of not less than three months.

That is three months after the jail sentence has been complied with. To count time served on a jail commitment as concurrent with the three months for nonpayment of a fine exceeding $15 is quite incongruous and ridiculous. We have already decided this question adversely to defendant in a case with similar facts as reported in our Delaware County Reports in Commonwealth v. Heffernan, 20 Del. Co. 333, which was a "cause celebre" in the Prohibition Era.

Here defendant has been in actual confinement for a period of almost four years. The act means actual confinement for three months after the conclusion of the jail term (being a penal statute) and must be strictly construed, where it says "he shall not be entitled to make such application until after he shall have been in actual confinement for a period of not less than three months", the statute means just that, and he has been in actual confinement for more than three months, from April 9, 1945, when his jail sentence was commuted by the Governor upon the recommendation of the Board of Pardons, a practice which has sprung up recently and has a tendency in practice to annul

sentences imposed by the judges, who are better able from experience and learning and first-hand information, with psychiatric and physiological clinics, fingerprinting and prison records, to administer the criminal laws and enforce their penalties. Instead of serving in some cases the minimum sentences, the sentences are thus reduced which cannot be legally done by the court after term time.

There is another significant situation in this case which does not commend itself to this court. Defendant herein was sentenced to five years' minimum term in the county prison, as was done when originally sentenced to the Eastern Penitentiary. Under the law he was entitled to receive credit for 18 months for good behavior and prison officials under the law were specifically charged with the duty of calling the matter to the attention of the Pardon Board and the Governor, and in due course this was done and the Governor issued a mandate commuting defendant's sentence and directing his discharge as of April 9, 1945.

We think this is irregular practice. If he were in the penitentiary, his case for parole could not be considered until the minimum sentence expired, yet in a county jail it can. What an anomaly in our parole practice! For what else should a person be in jail? He is put there to behave himself.

The fact that he was not discharged on April 9, 1945, is no fault of this court because it did not receive the mandate until the week of July 1, 1945, and it was acted upon at the next motion court, which was July 11, 1945. Therefore, this defendant has served now three months more than he should have served under the law, as construed by pardoning and parole authorities.

Defendant herein under such processes, as indicated above, and to which we do not subscribe, would have been entitled to his discharge on April 9, 1945, and the mandate from the Governor so states.

He has now served more than three months since the expiration of his sentence, of which he actually served approximately 3½ years in the Eastern State Penitentiary and not in the county jail.

We, therefore, allow this rule and to discharge petitioner, pending the hearing on the rule, upon his entering such security for his appearance, surrender and compliance with the decree of the court, as required by the Act of June 1, 1915, P. L. 704, sec. 2, 39 PS §10, supra.